# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17CR00024 |
| v. | **OPINION AND ORDER** |
| JEFFREY S. DALTON AND KAREN L. DALTON, | By: James P. Jones<br>United States District Judge |
| Defendants. | |

*Sean P. Beaty and Daniel T. McGraw, U.S. Department of Justice, Tax Division, Washington, D.C., for United States; Randall C. Eads, Eads & Eads, Abingdon, Virginia, for Defendant Jeffrey S. Dalton, and Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant Karen L. Dalton.*

In this criminal case, in which the defendants are accused of tax evasion and conspiracy to structure currency transactions, I determine several pretrial motions in limine filed by the parties.[1]

I.

Because I write primarily for the parties, I do not exhaustively restate the facts here. The Indictment sets forth the following pertinent allegations.

The defendants, Jeffrey S. Dalton and Karen L. Dalton, husband and wife, resided in Hillsville, Virginia, and owned and operated a subcontracting business,

---

[1] My decisions on the motions in limine are based upon the present record and are thus conditional. However, any motion to reconsider the following rulings based on changed circumstances must be made outside of the presence of the jury.

Blue Ridge Stainless, Inc. ("BRS"). BRS was treated as an S-Corporation for tax purposes, which means the defendants, as the corporation's sole shareholders, were responsible for reporting the income or losses of the corporation on their own individual income tax returns.

From 2009 through 2014, the defendants jointly filed their tax returns and self-assessed their taxes due as a result of income earned from BRS. The defendants failed to pay any taxes, penalties, or interest to the Internal Revenue Service ("IRS") for these years. From 2012 through 2015, the defendants communicated with the IRS regarding their tax liabilities, but still failed to pay the full amounts owed. It is alleged that the defendants also affirmatively acted to evade the payment of such amounts. The IRS levied the defendants' personal bank accounts, after which the defendants allegedly used the BRS business account to pay various personal expenses.

Count One of the Indictment charges that beginning in or around October 2010 and continuing to the present, the defendants willfully attempted to evade and defeat the payment of income tax for the calendar years 2009, 2010, 2011, 2012, 2013, and 2014. Count One alleges that the defendants did so by placing and holding real property in the names of their children and other family members as nominees, signing and causing to be filed a false IRS Form 433-A, and

withdrawing over $250,000 in cash from the BRS business account between June 10, 2015, and December 9, 2015, in increments of less than $10,000.

Count Two charges that beginning on or about June 10, 2015, and continuing through at least on or about December 9, 2015, the defendants knowingly conspired together for the purpose of evading the currency transaction reporting requirements under 31 U.S.C. § 5313(a), in violation of federal law, by withdrawing amounts close to but less than $10,000 at a time.

The government has filed four motions in limine[2] and a renewed motion for disclosure of defendants' financial statements. The defendants have filed joint motions to interview grand jury members and subpoena the IRS case agent. All of the motions have been fully briefed and orally argued by counsel.

II.

A. EVIDENCE OF POST-INDICTMENT PAYMENT TO THE IRS.

In its first motion in limine, the government seeks to preclude all evidence regarding the defendants' post-indictment payment of tax liabilities. The government argues that such evidence is not relevant and therefore inadmissible. In the alternative, the government contends that even if the court finds such evidence probative, any probative value is greatly outweighed by the substantial risk of confusing or misleading the jury, as well as jury nullification. The

---

[2] I previously granted without objection the United States' motion in limine requesting admission of various bank records.

defendants argue that the tax payment was not made post-indictment, but instead, the payment was arranged a week prior. Accordingly, the defendants contend that the payment is evidence of a lack of willfulness and should be admitted.

"Evidence of payment may be such that it merely shows a change of heart or an attempt to vitiate a crime." *United States v. Harned*, 279 F. App'x 262, 264 (4th Cir. 2008) (unpublished) (internal quotation marks and citation omitted). However, evidence of payment may be offered "under such circumstances as to warrant an inference of good faith and lack of evil intent," and such evidence "is admissible in an income tax evasion case to support the contention that there was . . . no intent to evade payment of taxes." *Id.* Admissibility "depends upon the facts and circumstances of each case." *Id.*

In this case, the defendants are alleged to have evaded their tax responsibilities for over five years. They did not finalize arrangements to pay such tax liabilities until a week before indictment, which was more than two years after their alleged criminal conduct. These circumstances suggest that the payment was an attempt to vitiate the crime.

The government argues that the defendants' subsequent payment does not detract from the criminality of their tax evasion. That crime would be complete as soon as each fraudulent understatement of taxes was filed, and subsequent intention to pay taxes is no defense to a past intention to evade taxes. *See Sansone*

*v. United States*, 380 U.S. 343, 354 (1965); *see also Unites States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) (holding that evidence of belated tax payments made while awaiting prosecution is irrelevant).

The government further argues that the defendants' act of paying the IRS after indictment was most likely a self-serving act performed more than two years after their alleged wrongdoing. Such an act would have minimal probative value as to the defendants' state of mind over the five years they allegedly filed understated tax returns. "[T]here is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime." *United States v. Radtke*, 415 F.3d 826, 840-41 (8th Cir. 2005).

The defendants argue that the tax payment prior to indictment is indicative of their state of mind at the time they originally failed to pay their taxes. The fact that the defendants made arrangements to pay the outstanding liability before indictment may suggest a lack of willfulness, but the defendants would have been aware of possible criminal charges since at least January 2016, and full payment to the IRS was not made until August 2017. The defendants intend to offer evidence at trial that they began making payments to the IRS in 2015 and had been attempting to obtain loans since before 2016. Under these circumstances, evidence

of payment could be offered to support the contention that the defendants were acting in good faith and had no intent to evade taxes.

The government also argues that evidence of payment would be confusing or misleading to the jury, and is likely to result in jury nullification. Federal Rule of Evidence 403 provides that evidence, though relevant, may be excluded if its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury. Here, evidence of full payment to the IRS could easily leave the jury wondering why the government is prosecuting the defendants for amounts they have now paid. In other words, the jury may take a "no harm, no foul" position and acquit the defendants based solely on the belated payment. However, I believe this concern could be mitigated by a jury instruction. I find that whether the August 2017 payment bears upon the defendants' earlier criminal intent is a factual matter for the jury to decide. Accordingly, I will deny the government's motion to exclude evidence pertaining to the defendants' post-indictment tax payment.

### B. Disclosure of Financial Statements and Affidavits.

Both defendants previously sought the appointment of counsel to represent them in this case, and they submitted several financial affidavits in connection with their requests for court-appointed counsel. The defendants executed these documents under penalty of perjury. While considering the defendants' requests

for counsel, the magistrate judge had expressed some concerns about the accuracy of the information presented in the financial affidavits regarding real property owned by the defendants and farming assets of their business. The defendants ultimately submitted revised financial affidavits to the magistrate judge to address her concerns.

The government later filed a Motion of the United States for Limited Disclosure of Defendants' Financial Affidavits and Statements, ECF No. 33, in which it asked the magistrate judge to disclose the affidavits at the conclusion of this case so that the government could conduct a perjury investigation. The government also requested disclosure of the documents for use in the trial of this matter as impeachment evidence. The defendants opposed the motion.

The magistrate judge granted the motion in part, ordering that the financial affidavits would be provided to the government at the conclusion of this case for the sole use of conducting a perjury investigation. Order, Nov. 8, 2017, ECF No. 40. She denied without prejudice the government's motion to obtain and use the documents as impeachment evidence, leaving that issue for me to decide should the defendants testify at trial. In response to the magistrate judge's order, the defendants filed a Joint Motion for Reconsideration, ECF No. 43, and the government filed a Renewed Motion for Limited Disclosure of Defendants' Financial Affidavits and Statements, ECF No. 44.

The Criminal Justice Act, which governs the appointment of counsel for indigent defendants, does not address the release of documents provided to the court by a defendant to determine his or her financial eligibility for appointed counsel. *See* 18 U.S.C. § 3006A. Likewise, the Criminal Justice Act Plan for this district does not address the sealing or disclosure of financial affidavits or other documents submitted by defendants in order to obtain appointed counsel.

Disclosure of financial affidavits to the government can implicate both a defendant's Fifth Amendment privilege against self-incrimination and his or her Sixth Amendment right to counsel. *See United States v. Hyde*, 208 F. Supp. 2d 1052, 1057 (N.D. Cal. 2002) (noting that "the weight of authority has either held or assumed that financial disclosures made as a condition to obtaining appointed counsel is sufficiently compelled so as to invoke Fifth Amendment concerns"). For this reason, courts have held that the government cannot use a defendant's financial affidavit to attempt to prove its case-in-chief against the defendant. *See, e.g., United States v. Hardwell*, 80 F.3d 1471, 1484 (10th Cir. 1996); *United States v. Ponzo*, Cr. No. 97-40009-NMG, 2012 WL 28065, at *5 (D. Mass. Jan. 3, 2012).

Nevertheless, courts have permitted disclosure of financial affidavits at the close of a case for the limited purpose of investigating perjury, finding that such disclosure balances the need to promote truthful completion of financial affidavits with the need to protect a defendant's Fifth and Sixth Amendment rights. *See*

*United States v. Patterson*, No. 1:15CR75-1, 2016 WL 411114, at *4 (W.D.N.C. Feb. 2, 2016); *Ponzo*, 2012 WL 28065 at *5-6; *United States v. Becker*, No. 09-40008-01-JAR, 2010 WL 1936038, at *2 (D. Kan. May 12, 2010); *United States v. Venator*, 568 F. Supp. 832, 836 (N.D.N.Y. 1983). In addition, at least one court has indicated a willingness to permit the government to access financial affidavits following a defendant's testimony for potential use as impeachment evidence. *Patterson*, 2016 WL 41114 at *4; *see also United States v. Delgado-Morales*, No. 92-8232, 1993 WL 560299, at *3-4 (5th Cir. Dec. 30, 1993) (unpublished) (discussing prosecutor's cross-examination of defendant regarding financial affidavit).

After considering the parties' arguments and reviewing the financial affidavits in camera, I will affirm the magistrate judge's ruling to disclose the documents to the government at the close of this case for the limited use of investigating possible perjury by the defendants. Regarding the government's renewed request to use the documents during the trial of this matter as impeachment evidence, I will reserve judgment on that issue until and unless the defendants choose to testify at trial.

### C. PROPOSED EXPERT TESTIMONY OF BRIAN ELY.

The government also seeks to exclude proposed testimony by the defendants' expert witness, Brian M. Ely. Mr. Ely, a real estate attorney, would

offer expert testimony concerning ownership of and legal interest in two parcels of real property. Specifically, Mr. Ely's opinion is that the defendants do not have an interest in either property at issue and therefore could not convey a valid interest in this property. This testimony will be based on his review of four land deeds and a credit line deed of trust.

The government argues that Mr. Ely should not be permitted to testify at trial because his testimony: (1) is not scientific, technical, or otherwise specialized; (2) will not assist the jury in understanding or resolving a fact at issue; (3) is an impermissible legal conclusion; and (4) any minimal probative value is substantially outweighed by the danger of misleading the jury.

The government contends that no expert testimony is necessary to determine who owns the properties. Indeed, the government expects to have the current owners of the property testify about their interest. In addition, the government claims that the proposed expert testimony would potentially mislead the jury because the government expects to prove that the defendants orchestrated certain transactions in the names of the current owners in order to evade tax liabilities. Finally, the government claims that Mr. Ely's opinion is essentially a legal conclusion that he reached by applying his knowledge of Virginia property law to the documents provided to him.

In response, the defendants contend that not every juror will own property or understand the legal significance of being named on a deed. The defendants further argue that Mr. Ely's testimony would provide a clear and concise opinion as to what a deed holder can and cannot do with the property, namely that a deed holder has the power to transfer the property and a non-deed holder has no such power.

The Federal Rules of Evidence allow expert evidence under certain circumstances.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court interpreted this rule as placing the court in a "gatekeeping role" between expert evidence and the trier of fact. 509 U.S. 579, 589, 597 (1993). Accordingly, the

court is tasked with determining whether the proponent has established by a preponderance of the evidence that the expert's opinion is admissible. *See id.* at 592 n.10 (citing *Bourjaily v. United States,* 483 U.S. 171, 175–76 (1987)); Fed. R. Evid. 104(a).

The most compelling argument by the government is that Mr. Ely's opinion is a legal conclusion. "[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 561-62 (4th Cir. 2006). However, Rule 704(a) allows an expert to offer an opinion about an ultimate issue to be decided by a jury. It is difficult to view Mr. Ely's opinion as anything but a legal conclusion formulated by applying his legal knowledge to the facts he was provided. Moreover, Mr. Ely is not testifying about an ultimate issue. Current ownership, of which Mr. Ely will testify, does not address the issue of whether the defendants orchestrated the transfer of such property in order to evade tax liabilities. Furthermore, ownership of the parcels could be, and is anticipated by the government to be, determined through the testimony of the current owners. Mr. Ely's testimony would be unnecessary to determine the legal interest in the properties. Accordingly, I will grant the government's motion to exclude such testimony.

D. REFERENCES TO COMPLAINTS AGAINST WALL & ASSOCIATES.

The government requests that the defendants be precluded from offering any evidence, argument, or cross-examination about (1) a civil complaint filed by the Virginia Attorney General against Wall & Associates, Inc. ("W&A"); and (2) an official consumer complaint form that Mr. Dalton filed with the Virginia Attorney General's office against W&A. The government contends that both documents, if offered for the truth of their contents, are impermissible hearsay. The government also contends that the civil complaint against W&A is essentially pattern evidence under Rule 404 of the Federal Rules of Evidence, and the introduction of such evidence would result in a trial within a trial regarding the allegations contained in the complaint.

*1. Civil Complaint Against W&A.*

In September 2017, the Virginia Attorney General's Office filed a civil complaint against W&A in state circuit court alleging that W&A violated the Virginia Consumer Protection Act by misrepresenting to clients its results, duration and cost of services, and employee experience, qualifications, and abilities. The government claims that the lawsuit is nothing more than allegations at this point and the specifics of the allegations are generally unknown.

The allegations in the complaint have some relevance to the criminal case against the defendants. The complaint alleges that W&A made certain fraudulent

misrepresentations in order to attract clients. In particular, the complaint alleges that W&A grossly overqualified its employees' tax experience. The government contends that even if true, the allegations have no impact on the defendants' culpability for tax evasion and could easily confuse or mislead the jury.

The defendants hired W&A in 2012, which was directly in the middle of the period of their alleged tax evasion. The defendants also paid W&A fees totaling nearly $24,000. As the defendants point out, such payment suggests that they relied on W&A for specialized assistance with their tax issue and were seeking resolution as promised by W&A. Moreover, the defendants contend that the government has indicated that it will call various W&A employees as witnesses at trial and if so, the defendants should be allowed to cross-examine such witnesses.

I find that the Virginia Attorney General's complaint is hearsay, but that it is admissible as a public record under Rule 803(8). However, I agree with the government that introducing evidence of the complaint might very well send the case far afield with respect to the truth of the allegations contained therein. Furthermore, I find that the complaint is only marginally relevant to this case. Accordingly, I will grant the government's motion to exclude evidence of the civil complaint against W&A.

*2. Consumer Complaint filed by Mr. Dalton.*

Mr. Dalton filed a consumer complaint form against W&A with the Office of the Attorney General of Virginia in September 2017. The complaint alleges that the defendants paid W&A $23,800 "to help . . . resolve back taxes." Mot. *in Limine* to Preclude References to Compls. Made Against Wall & Assocs., Inc. Ex. 2, at 3, ECF No. 60. The complaint further provides that the defendants "were told by Wall & Associates the reason [the IRS started putting liens on their house] was that [the defendants] had been lying to Wall & Associates. In fact we had not been lying to Wall & Associates." *Id.*

This complaint, although arguably relevant, is inadmissible hearsay. Accordingly, I will also grant the government's motion as it pertains to the consumer complaint filed against W&A by Mr. Dalton.

E.  MOTION TO INTERVIEW GRAND JURY MEMBERS.

The defendants have moved for permission to interview members of the grand jury to determine whether they would have voted to indict the defendants had the government provided additional testimony regarding the defendants' attempt to pay the outstanding taxes they owed and the fact that they stopped structuring bank account withdrawals in response to a warning by the IRS case agent. *See* ECF Nos. 85, 88. I conclude that Rule 606(b) of the Federal Rules of

Evidence prohibits such interviews of grand jurors, and I will therefore deny the motion.

At the pretrial motions hearing, when confronted with Rule 606(b), the defendants suggested that I review the transcript of the IRS case agent's grand jury testimony, find that the grand jurors' decision to indict was substantially influenced by false evidence or the exclusion of evidence negating the defendants' guilt, and dismiss the Indictment. I decline to do so. The government had no duty to present exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 52-54 (1992). The defendants have not met the high standard required to disturb the grand jury's finding of probable cause. *See United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999); *United States v. Derrick*, 163 F.3d 799, 807-08 (4th Cir. 1998). I find that there has not been sufficient evidence presented that would cause me to dismiss the Indictment because of prosecutorial misconduct.

F.  MOTION TO SUBPOENA IRS AGENT.

The defendants have moved for authorization to subpoena the IRS case agent and compel his testimony at trial. The government requires compliance with the IRS *Touhy* regulations in order for the agent to be called as a defense witness. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Shortly after filing their motion, as required by the IRS *Touhy* regulations, the defendants obtained testimony authorization from the IRS and issued a

subpoena to the agent. Therefore, the defendants' motion is now moot. At the pre-trial conference, however, the defendants indicated that they intend to question the IRS agent about his warning to the defendants regarding structured transactions. I likely will not permit the defendants to get into the issue of the warning, but I decline to finally rule on this issue at this time, but will await further evidence at trial. Accordingly, while the IRS agent has now been subpoenaed and may be called by defense counsel at trial, I reserve ruling on whether I will permit the defendants to question the agent concerning his warning about structured transactions. In the meantime, no reference must be made before the jury as to the agent's alleged warning.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. Government's Motion *in Limine* to Preclude Defendants from Referring to Post-Indictment Payment of Income Tax to the IRS, ECF No. 34, is DENIED;

2. The defendants' Joint Motion for Reconsideration, ECF No. 43, is DENIED;

3. Government's Renewed Motion for Limited Disclosure of Defendants' Financial Affidavits and Statements, ECF No. 44, is TAKEN UNDER ADVISEMENT;

4. Government's Motion *in Li*mine to Exclude the Defendants' Proposed Expert Witness Mr. Brian Ely, ECF No. 57, is GRANTED;

5. Government's Motion *in Limine* to Preclude References to Complaints Made Against Wall & Associates, ECF No. 60, is GRANTED;

6. Defendants' Joint Motion to Interview All Members of the Grand Jury Who Determined Probable Cause Existed to Issue an Indictment in Order to Determine if the Grand Jury was Prejudiced by the Government's Failure to Disclose Exculpatory Evidence, ECF Nos. 85 and 88, is DENIED; and

7. Defendants' Joint Motion to Authorize Subpoena of Government Agent, ECF No. 90, is DENIED AS MOOT.

ENTER: January 10, 2018

/s/ James P. Jones
United States District Judge